*Syeed v. Bloomberg L.P.*

# United States Court of Appeals
## For the Second Circuit

August Term 2022

Argued:  January 9, 2023
Decided:  January 23, 2023

No. 22-1251

NAFEESA SYEED,

*Plaintiff-Appellant,*

*v.*

BLOOMBERG L.P.,

*Defendant-Appellee.*\*

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-7464, Gregory H. Woods, *Judge.*

Before:   JACOBS, SULLIVAN, and PÉREZ, *Circuit Judges.*

This case presents an unresolved question of New York law:  whether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the New York City Human Rights Law (the "NYCHRL") or the New York State Human Rights Law (the "NYSHRL") if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

State-based job opportunity on discriminatory grounds. Because we conclude that this issue implicates a host of important state interests, we reserve decision and certify the question to the New York Court of Appeals.

DECISION RESERVED AND QUESTION CERTIFIED.

> NIALL MACGIOLLABHUI, Law Office of Niall MacGiollabhui, New York, NY, *for Plaintiff-Appellant Nafeesa Syeed.*
>
> ELISE M. BLOOM, Proskauer Rose LLP, New York, NY (Allison L. Martin, Proskauer Rose LLP, New York, NY, Mark W. Batten, Proskauer Rose LLP, Boston, MA, *on the brief*), *for Defendant-Appellee Bloomberg L.P.*

RICHARD J. SULLIVAN, *Circuit Judge*:

This case presents an unresolved question of New York law: Whether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the New York City Human Rights Law (the "NYCHRL") or the New York State Human Rights Law (the "NYSHRL") if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or State-based job opportunity on discriminatory grounds. Because we conclude that this issue implicates a host of important state interests, we reserve decision and certify the question to the New York Court of Appeals.

2

# I. Background

Bloomberg L.P. ("Bloomberg") is a privately held company that operates Bloomberg Media, a news organization that employs approximately 2,700 reporters, producers, and editors across over 120 news bureaus worldwide.[1] Bloomberg Media's employment decisions are controlled by its Editorial Management Committee, which operates from Bloomberg's New York City headquarters.

In October 2014, Nafeesa Syeed, a South Asian-American woman, began working for Bloomberg's Dubai news bureau as a Persian Gulf economy and government reporter. A year later, Syeed informed Bloomberg that she wished to transfer to its New York or Washington, D.C. bureaus because of her husband's job location. After applying for multiple positions, Syeed ultimately obtained a position in the Washington, D.C. bureau reporting on cybersecurity. By mid-2018, Syeed realized that there was no career path for her at that bureau, and she applied for several reporting jobs with Bloomberg in New York City. In particular, Syeed repeatedly told her team leader that she was interested in filling a U.N.-reporter position. That vacancy, however, was ultimately filled by a man.

---

[1] The facts are drawn from the second amended complaint and are accepted as true for the purposes of this opinion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

When Syeed subsequently asked why she had not been considered for the U.N. position, her team leader responded that Syeed had never said that she wanted to cover foreign policy; he also advised her that she had to advocate for herself if she wanted to advance at Bloomberg. Another editor told Syeed that one of the reasons she was not considered for the U.N. position was that the position had not been designated as a "diversity slot." J. App'x at 48. In June 2018, Syeed met with the Head of Human Resources for the Washington, D.C. bureau and complained that Bloomberg had a racist and sexist culture. The Head of Human Resources instructed Syeed to report her concerns to a senior executive editor for diversity, talent, standards, and training at Bloomberg Media. Two days later, Syeed informed her team leader and managing editor that she could not continue to work at Bloomberg because of the discrimination that she faced.

On behalf of herself and other similarly situated individuals, Syeed – now a resident of California – filed a class-action lawsuit in New York state court against Bloomberg and several of its employees on August 9, 2020; shortly thereafter, she amended her complaint. Prior to any further proceedings in state court, the Defendants removed the case to federal court pursuant to the Class Action Fairness Act and moved to dismiss the amended complaint under Federal Rule of

4

Civil Procedure 12(b)(6). Rather than oppose the motion, Syeed again amended her complaint, dropping all of the individual employee defendants. In her second amended complaint, Syeed alleged class claims under NYSHRL for disparate treatment and disparate impact on the basis of sex, as well as individual claims for constructive discharge and, under NYSHRL and NYCHRL, for discrimination on the basis of race and sex in denying her promotions, setting her compensation, and creating a hostile work environment.

Thereafter, Bloomberg again moved to dismiss under Rule 12(b)(6). Upon that motion, the district court (Woods, *J.*) dismissed all of Syeed's claims against Bloomberg, including her NYCHRL and NYSHRL claims based on Bloomberg's failure to promote her to positions in New York. *See Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321, 329–34 (S.D.N.Y. 2021).[2] More specifically, the district court concluded that Syeed's failure-to-promote claims must be dismissed because, at all relevant times, Syeed was a nonresident of New York City and State who worked in Washington, D.C., and thus did not and could not adequately plead that she had felt the impact of Bloomberg's discrimination *in* New York City or

---

[2] On appeal, Syeed only contests the district court's dismissal of her failure-to-promote claims.

State. *Id.* The district court entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b) on Syeed's claims, and Syeed timely appealed.

## II. Standard of Review

We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Accordingly, we consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in Syeed's favor. *See id.*

## III. Discussion

Syeed's appeal raises a single legal question: Whether a nonresident plaintiff not yet employed in New York City or State satisfies the NYCHRL or NYSHRL impact requirement if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or State-based job opportunity on discriminatory grounds. We find that this core question is an unsettled issue of New York law that merits certification to the New York Court of Appeals.

"Although the parties did not request certification, we are empowered to seek certification *nostra sponte*." *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 198

(2d Cir. 2009). "We may certify a question to the New York Court of Appeals where that court has not spoken clearly on an issue and we are unable to predict, based on other decisions by New York courts, how the Court of Appeals would answer a certain question." *Ortiz v. Ciox Health LLC*, 961 F.3d 155, 158 (2d Cir. 2020) (internal quotation marks omitted); *see also* 2d Cir. R. 27.2(a); 22 N.Y.C.R.R. § 500.27(a). Our discretion to certify is principally guided by three factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). Each of these factors weighs in favor of certification here.

As to the first certification factor, the New York Court of Appeals has *not* decided the specific question raised in this case. The closest case is *Hoffman v. Parade Publications*, where the New York Court of Appeals held that, because NYCHRL and NYSHRL were intended to protect persons who inhabit or are persons within New York City and State, respectively, "nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an

7

impact within those respective boundaries." 15 N.Y.3d 285, 289, 291 (2010).[3]

Applying that test, the *Hoffman* court found that the plaintiff – who resided and worked in Georgia, but who attended quarterly meetings in, and was managed and fired from, New York City – was not himself sufficiently impacted within New York City or State to be able to bring a claim for discriminatory termination. *Id.* at 288, 292. *Hoffman*, however, was silent as to whether, in discriminatory failure-to-hire or failure-to-promote cases, a nonresident plaintiff – who did not work in New York City or State, but who alleged that but for an employer's unlawful conduct, he or she would have worked in New York City or State – would also be unable to assert sufficient personal impact in New York City or State.

---

[3] *Hoffman* based its intent conclusions on certain statutory provisions. *See, e.g., id.* at 289 (noting that NYCHRL "declares, among other things, that 'prejudice, intolerance, bigotry, and discrimination . . . threaten the rights and proper privileges of [the city's] *inhabitants*'"; also noting that the NYCHRL "created the City Commission on Human Rights to, among other things, 'foster mutual understanding and respect among all persons *in the city of New York*'" (quoting N.Y.C. Admin. Code §§ 8-101, 8-104) (alterations and emphasis added by *Hoffman*)); *id.* at 291 (noting that NYSHRL "declares that the State of New York 'has the responsibility to act to assure that every individual *within* [New York State] is afforded an equal opportunity to enjoy a full and productive life,' and that failure to afford equal opportunity 'threatens the peace, order, health, safety and general welfare of the state and its *inhabitants*'" (quoting N.Y. Exec. Law § 290) (alterations and emphasis added by *Hoffman*)). We recognize, though, that N.Y.C. Admin. Code § 8-104 has been repealed.

Nor does *Hoffman* provide clear guidance from which we can predict how the New York Court of Appeals would answer our question. Certain portions of *Hoffman* seem to imply that nonresidents can satisfy the NYCHRL or NYSHRL impact requirement only if they currently work in New York City or State. *See, e.g., id.* at 291 ("[T]he impact requirement [for nonresidents] . . . *confines* the protections of the NYCHRL to those who are meant to be protected – *those who work in the city*." (emphasis added)); *id.* ("Application of the 'impact' requirement to [NYSHRL] claims achieves the same ends as is the case with its City counterpart, because it permits those who *work in the state* to invoke its protections." (emphasis added)). But given that the *Hoffman* court was only asked to address a claim related to a discriminatory termination, we do not think it is our place to read *Hoffman*'s references to "those who work in" New York City or State to necessarily preclude those who *would* work in New York City or State absent discrimination. *Id.* Furthermore, we note that another portion of *Hoffman* seems to allow for the possibility that a plaintiff could satisfy the impact requirement without living or working in New York City or State at the time of the discriminatory acts. *See id.* at 292 (finding that dismissal was proper because "Hoffman was neither a resident of, nor employed in, the City or State of New York. *Nor* does Hoffman state a claim

9

that the alleged discriminatory conduct had any impact in either of those locations." (emphasis added)).[4]

Other decisions by New York courts are equally ambiguous on this issue. For starters, the parties have not cited, and we are not aware of, *any* lower state-court case where a nonresident plaintiff who was not yet employed in New York City or State raised a failure-to-hire or failure-to-promote claim. And to the extent that lower state-court cases applying the impact requirement to the more typical hostile-work-environment or termination fact patterns are relevant, the cases cut both ways. For example, some cases have interpreted the impact requirement to "turn[] primarily on [the plaintiff's] physical location at the time of the alleged discriminatory acts," *Benham v. eCommission Sols., LLC*, 989 N.Y.S.2d 20, 21 (1st Dep't 2014); *see also Wolf v. Imus*, 96 N.Y.S.3d 54, 55 (1st Dep't 2019) (same), while others seem to have more broadly posited that a plaintiff can allege impact if he or she can show that the discriminatory acts affected "the terms, conditions[,] or extent of [his or her] employment . . . within the boundaries of

---

[4] *See also Pakniat v. Moor*, 145 N.Y.S.3d 30, 30–31 (1st Dep't 2021) (like *Hoffman*, emphasizing that NYSHRL is "intended to protect the residents of this State or nonresidents who work in this State," but also concluding that the plaintiff could not make out her NYCHRL or NYSHRL claims "because plaintiff was living and working in Montreal, Canada at the time of the alleged discriminatory conduct *and* she failed to allege that the conduct had any impact in either New York State or New York City" (emphasis added)).

New York," *Hardwick v. Auriemma*, 983 N.Y.S.2d 509, 512 (1st Dep't 2014); *see also*

*Jarusauskaite v. Almod Diamonds, Ltd.*, 152 N.Y.S.3d 579, 580 (1st Dep't 2021) (same).

Federal courts have been no more conclusive. Although this is a matter of first impression in this Circuit,[5] district courts within this Circuit have reached different conclusions. As already described, the district court in this case concluded that the NYCHRL and NYSHRL impact requirement could not be met by a nonresident plaintiff whose only asserted geographical connection was that she was denied a promotion to a position in New York City and State. *See Syeed*, 568 F. Supp. 3d at 330–34. In reaching this conclusion, the district court relied heavily on the statements in *Hoffman* seeming to imply that a nonresident plaintiff must work in the City or State at the time of the discriminatory act to be impacted

---

[5] There are no Second Circuit decisions, precedential or non-precedential, on point. *See, e.g.*, *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 182–83 (2d Cir. 2016) (in a discriminatory-termination case, holding that a plaintiff who "worked in Yonkers, was supervised in Yonkers, and was terminated in Yonkers," but spoke on the phone to patients in New York City, did not satisfy the NYCHRL impact requirement, because she was not personally impacted in the City); *Ware v. L-3 Vertex Aerospace, LLC*, 833 F. App'x 357, 358–59 (2d Cir. 2020) (in a hostile-work-environment and retaliatory-termination case, holding that a plaintiff who was a Florida resident, worked as a supply technician in Afghanistan, and signed an employment agreement with a Mississippi choice-of-law provision, did not satisfy the NYCHRL or NYSHRL impact requirement by virtue of his employer's parent company being headquartered in New York); *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012) (in a discriminatory- and retaliatory-termination case, holding that a plaintiff who "at all times relevant to his complaint lived and worked in Connecticut," but frequently communicated with his former employer's New York headquarters and attended meetings there, did not satisfy the NYCHRL impact requirement through those tangential connections).

in either location.  *See, e.g., id.* at 331; *see also id.* at 331–32 (also citing favorable

language from *Pakniat*, *Hardiwick*, *Benham*, and *Wolf*).

But the three other district courts that have considered the pertinent

question have reached the opposite conclusion.  For example, in *Anderson v.*

*HotelsAB, LLC*, the plaintiff alleged that, due to her relationship with her disabled

son, she was not hired for a position that would have required her to work about

half the year in New York City.  No. 15-cv-712 (LTS), 2015 WL 5008771, at *1–2

(S.D.N.Y. Aug. 24, 2015).  Invoking language similar to *Hardwick* and *Jarusauskaite*,

the district court noted that "the [NYCHRL] impact requirement is satisfied if the

plaintiff alleges that the conduct has affected the terms and conditions of plaintiff's

employment within the city," and thus refused to dismiss the case because the

allegedly discriminatory refusal to hire "had an impact with respect to [the

plaintiff's] prospective employment responsibilities in New York City."  *Id.* at *2–

4; *see also Chau v. Donovan*, 357 F. Supp. 3d 276, 283–84 (S.D.N.Y. 2019) (finding that

a California plaintiff alleging that she was not hired for a New York City position

due to her refusal to submit to sexual demands had adequately pleaded the

NYCHRL and NYSHRL impact requirement); *Scalercio-Isenberg v. Morgan Stanley*

*Servs. Grp. Inc.*, No. 19-cv-6034 (JPO), 2019 WL 6916099, at *1, *4 (S.D.N.Y. Dec. 19,

12

2019) (finding that a New Jersey plaintiff alleging that she was not hired for a New York City position due to her age, gender, and disability had adequately pleaded the NYCHRL and NYSHRL impact requirement).

In sum, given the absence of *any* state-court decisions directly on point, as well as the absence of clear guidance from any state-court decisions from which we can predict how the New York Court of Appeals would answer our question, we conclude that certification of the question is preferable to resolving it ourselves. *See CFTC v. Walsh*, 618 F.3d 218, 231 (2d Cir. 2010) (observing that certification is appropriate where an issue has not been litigated often enough in New York courts to give rise to "sufficient precedents . . . to make a determination concerning [its] proper outcome" (internal quotation marks omitted)).

As to the second certification factor, resolving this issue involves making value judgments and weighing competing policy interests, which the New York Court of Appeals is better positioned to do. *See Ortiz*, 961 F.3d at 159. On the one hand, a ruling for Syeed would allow NYCHRL and NYSHRL suits against prospective employers who hire for jobs in New York City or State by plaintiffs who have no past or present geographical connections. *See Syeed*, 568 F. Supp. 3d at 333 ("*Anderson's* misapplication of the impact test . . . expands the class of

nonresident plaintiffs protected by the NYCHRL [and NYSHRL] to include individuals who do not work in the city or state, but who merely speculate that they might have done so someday in the future.").[6] On the other hand, a ruling for Bloomberg would serve to immunize employers from liability under NYCHRL or NYSHRL for discriminatory conduct pertaining to New York City- or State-based jobs – conduct which does arguably have an impact within New York City or State. *See Pakniat*, 145 N.Y.S.3d at 31 ("[NYCHRL and NYSHRL] are meant to deter discriminatory behavior by New York employers, as well as to compensate the employees impacted by that behavior.").[7] Given these competing state interests, we find that this issue is best answered by the New York Court of

---

[6] *Cf. Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2022 WL 1173433, at *4 (S.D.N.Y. Apr. 20, 2022) ("[I]f 'impact can be shown by a mere hope to work in New York down the line, the flood gates would be open.'" (quoting *Kraiem v. JonesTrading Inst. Servs. LLC.*, 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020)).

[7] We also note that the New York City Council amended NYCHRL post-*Hoffman* "to clarify its intent to foster jurisprudence maximally protective of civil rights in all circumstances." *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (internal quotation marks omitted); *see also* N.Y.C. Admin. Code § 8-130 (identifying three cases "that have correctly understood and analyzed the liberal construction requirement"). Of course, "it is well settled that the Legislature is presumed to be aware of the decisional and statute law in existence at the time of an enactment." *Odunbaku v. Odunbaku*, 28 N.Y.3d 223, 229 (2016) (internal quotation marks and alterations omitted). But where, as here, no decisional law appears to have definitively answered our question, the post-*Hoffman* (and other previous) amendments may have some bearing on how broadly to interpret the NYCHRL impact requirement.

Appeals. *See Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indemnity Ins. Co.*, 955

F.3d 305, 314 (2d Cir. 2020).

As to the third and final certification factor, the answer to the certified issue

will no doubt control the outcome of the case before us. If the New York Court of

Appeals determines that a nonresident plaintiff not yet employed in New York

City or State may nevertheless satisfy the NYCHRL or NYSHRL impact

requirement by pleading and later proving that an employer deprived the plaintiff

of a New York City- or State-based job opportunity on discriminatory grounds,

the district court's Rule 12(b)(6) dismissal of Syeed's failure-to-promote claims

would have to be reversed and the case remanded for further proceedings. But if

the New York Court of Appeals decides that only nonresident plaintiffs who are

already employed in New York City or State can meet the NYCHRL or NYSHRL

impact requirement, the district court's decision would have to be affirmed.

### IV.    Conclusion

For the reasons stated above, we **RESERVE** decision and **CERTIFY** the

following question to the New York Court of Appeals:

> Whether a nonresident plaintiff not yet employed in New York City
> or State satisfies the impact requirement of the New York City Human
> Rights Law or the New York State Human Rights Law if the plaintiff
> pleads and later proves that an employer deprived the plaintiff of a

15

New York City- or State-based job opportunity on discriminatory grounds.

Of course, the New York Court of Appeals is not limited to the question stated. Rather, the New York Court of Appeals may modify the certified question as it sees fit and may direct the parties to address other issues that it deems relevant to the circumstances presented in this appeal.

It is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a certificate, as set forth below, together with a copy of this opinion and a complete set of briefs, appendices, and the record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification.

## Certificate

The foregoing is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.

16